WILLIAM PAUL THOMPSON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 16221

July 8, 1986                    721 P.2d 1290

*David G. Parraguirre,* Public Defender, *Mark Mausert,* Deputy Public Defender, and *Jane G. McKenna,* Deputy Public Defender, Washoe County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

A jury convicted William Paul Thompson of first degree murder, attempted murder, robbery, attempted robbery, all with the use of a deadly weapon, and carrying a concealed weapon. At the penalty hearing for the first degree murder conviction, the jury found two aggravating circumstances and no mitigating circumstances and sentenced Thompson to death. On appeal, Thompson raises two assignments of error. We conclude that his contentions lack merit.

On April 21, 1984, appellant met Randy Waldron and Arnold Lehto, who were camping by the railroad tracks in Reno. At that time, appellant knew that the police were looking for him regarding a double homicide in California. Appellant had spent a good portion of the day drinking and gambling. Waldron was sniffing paint from a plastic bag. Waldron and Lehto asked if appellant was a police officer, commenting that they were afraid of strangers because they had been beaten up a couple of weeks before. Thompson said he was not a· police officer and that he was not afraid of others. Appellant then showed them the .22 caliber pistol he carried. After spending some time drinking and talking, Waldron pulled out his wallet and gave Lehto some money to purchase more liquor. At this time, appellant saw the fifty dollar bill Waldron had in his wallet. Lehto left and returned after making the purchases. After more drinking, Lehto left for his own camp. Thompson claims that after this, he and Waldron were talking while Waldron carved an apple with a knife. Suddenly, Waldron swung at appellant with the knife. At this point, appel-

lant pulled his gun and shot Waldron four times in the head. Thompson then moved the body and covered it with a blanket. He also took Waldron's wallet and money, silver watch and a bottle of wine.

Appellant then headed for downtown Reno. Enroute, he met another man who had been evicted from his home. The men talked and concluded that they should find a car and leave town. When the men reached a casino parking lot, they saw two women by a truck. The women noticed the men and were wary. The men approached the women, Thompson pulled his gun and told the women to move. One of the women had picked up a tire iron. She threw it at appellant, hitting him in the chest and knocking him down. The women ran and hid behind a building. Appellant shot at the women as they ran. One of the victims peeked out from behind the building and another shot rang out. Appellant then fled, but was arrested a short time later after leaving a casino. After Waldron's body was discovered, appellant denied any knowledge of what had happened, only later to claim self-defense.

Thompson relies on two alleged errors on the part of the trial court. First, Thompson contends that the trial court committed reversible error because it did not excuse one member of the venire for cause. This argument is not persuasive. It is apparent that the challenged venireman held strong feelings in favor of capital punishment for those who kill with premeditation. As he explained during *voir dire,* he favors "a life for a life." Moreover, although he proclaimed a willingness to follow the law and "be fair," his final two responses to defense counsel indicated he would accord the district attorney a lesser standard (presumably of proof) during the penalty phase of trial and that his personal conviction favors "an eye for an eye and a tooth for a tooth"— meaning that a person convicted of "murder one" should die for it. We are persuaded that the challenge for cause should have been granted. Nevertheless, it is clear from the record that appellant was not prejudiced by the district court's ruling. The venireman was removed by appellant's first peremptory challenge and appellant has not demonstrated that any other jurors proved unacceptable and would have been excused had an additional peremptory challenge been available. In fact, defense counsel expressly accepted the entire panel. Moreover, appellant never requested additional peremptory challenges. Accordingly, this assignment of error is without merit.

In appellant's second assignment of error, he contends that the

trial court erred in admitting evidence of two collateral homicides from California.

The admission of evidence of other crimes is governed by NRS 48.045(2).[1] That statute provides for the admission of such evidence when used for certain limited purposes. One of the listed exceptions concerns evidence tending to show that a defendant's crime was committed in furtherance of a plan. The State offered the evidence in question to show Thompson's plan to obtain money to allow him to flee the state because he knew that law enforcement officers were looking for him concerning another homicide. The evidence was admitted for this purpose. The district court did not err in allowing the admission of such evidence.

This Court has previously addressed this issue in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). In that case, we identified the necessary procedures that should be followed in order to admit such evidence. A review of the record reveals that the requisite procedures were followed by the State. Although the district court did not explain the basis for every aspect of its ruling, it clearly weighed the evidence before allowing its admission. Therefore, the trial court did not err in the procedure used for the admission of such evidence.

Appellant asks this Court to apply our holding in Longoria v. State, 99 Nev. 754, 670 P.2d 939 (1983), to exclude the collateral offenses in the case at bar. We decline to do so. The two cases can easily be distinguished. In *Longoria,* the defense had no notice that a collateral offense would be raised by the state. In that case, the collateral offense was first brought out during cross-examination, and the state was ill-prepared to prove Longoria's culpability in the prior incident. In the case at bar, there was a motion limine for exclusion of the collateral offenses before the beginning of trial. The defense was clearly on notice, and full consideration was given to the quality of the state's proof and the probative value of the collateral offenses prior to a ruling outside the jury's presence, on admissibility.

Finally, the jury was instructed on the limited use of the evidence presented. The standard of review concerning the dis-

---

[1]That statute provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

trict court's ruling is manifest error. *See* Brown v. State, 81 Nev. 397, 404 P.2d 428 (1965). This Court will continue to respect the trial court's rulings unless they are manifestly wrong. The evidence presented by the State was substantial and convincing. It was admitted for a proper purpose under Nevada's evidence code. Accordingly, we perceive no basis for concluding that the district court was manifestly wrong.

Appellant has not challenged the legal propriety of his death sentence. It is, however, necessary for this Court to review that sentence and determine its applicability under Nevada law as it existed at the time of Thompson's criminal conduct.[2]

The jury found two aggravating circumstances present in the homicide committed by Thompson: (1) the murder was committed while the person was engaged in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, a robbery; and (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest. The jury also found that there were no mitigating circumstances and fixed Thompson's penalty at death. The record provides substantial evidence in support of the jury's findings. Also, the record reveals no evidence that would otherwise undermine that jury's verdict.

We also conclude that appellant's sentence of death is not excessive or disproportionate to the penalty imposed in similar cases in this State. The jury determined that Thompson was guilty of the crimes charged. The jury also determined that there was no valid defense that would otherwise excuse or mitigate Thompson's conduct. In every respect, therefore, appellant's sentence is proportionate to other death sentences imposed in Nevada. *See, e.g.,* Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985); Wilson v. State, 101 Nev. 452, 705 P.2d 151 (1985); Rogers v. State, 101 Nev. 457, 705 P.2d 664 (1985); Miranda v. State, 101 Nev. 562, 707 P.2d 1121 (1985); Bishop v. State, 95 Nev. 511, 597 P.2d 273 (1979).

Finally, the record reveals no aspect of Thompson's death sentence resulting from the influence of passion, prejudice or any arbitrary factor.

---

[2]NRS 17.005(2)(d) was amended to abolish the proportionality review requirement. However, this amendment took effect on June 6, 1985. 1985 Stats. ch. 527 § 1, at 1597-1598. The prohibition against *ex post facto* laws requires that we apply the law as it existed at the time the crime was committed. *See* Goldsworthy v. Hannifin, 86 Nev. 252, 468 P.2d 350 (1970). In *Goldsworthy* we held that an act amending parole eligibility could not be applied to the detriment of a defendant whose crime was committed before the amendment took effect. *Id.* at 256-257. Because Mr. Thompson's crime took place in 1984, we must conduct a proportionality review of his sentence.

We conclude that Thompson's assignments of error lack merit. Accordingly, we affirm Thompson's judgments of conviction and his sentence of death.

GUNDERSON, STEFFEN, and YOUNG, JJ., and WHITEHEAD[3] and BERKSON, D. J.,[4] concur.