WILLIAM PAUL THOMPSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 18813

April 4, 1989                                        771 P.2d 592

*Robison, Belaustegui & Robb* and *David C. McElhinney,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

---

## OPINION

By the Court, ROSE, J.:

Appellant Thompson was arrested on April 21, 1984, in Reno and eventually charged with murder, attempted murder, robbery and attempted robbery, in Washoe County, Nevada. On August 16, 1984, Thompson was waiting for a hearing to begin in district court and spent six hours in a holding cell with another inmate, Robert Dean Kennedy, who was charged with burglary and the possession of stolen property committed in the Reno area.

Sitting across the table from each other, Thompson and Kennedy engaged in the usual jailhouse talk that included their offenses, drugs and sex. Thompson discussed his pending charges in Reno; and when Kennedy mentioned that he had a matter pending in Placer County, California, Thompson volunteered in detail the circumstances of the murder of two men he had committed along the American River near Auburn, California.

Regarding the Reno homicide, Thompson told Kennedy that he thought he could beat the case by using the defense of self defense and that he would testify that the victim pulled a knife on him at the murder scene, even though that was not the case. Thompson also told Kennedy that he put a knife in the victim's hand and that Thompson knows that the police found a knife.

Thompson also told Kennedy that he committed murders in Kansas and New York and that he always used a .22 because it was the perfect assassination weapon. Kennedy observed that Thompson had a gleam in his eye and an erection when talking about the murders he had committed.

Kennedy was no stranger to law enforcement and had acted as an informant and agent for the police in the past. In 1982, Kennedy testified as a prosecution witness in a murder case in California. He testified about the accused confessing to him when both were inmates in jail. This testimony was subsequently suppressed because the California Superior Court declared that Kennedy was an unannounced police presence and was acting as a police agent when the admissions by the accused were made. The court decision was based on the fact that Kennedy had reached an agreement with the prosecutor whereby Kennedy would obtain information from the accused and then testify to it. In exchange for his help, Kennedy would have certain charges pending against him dismissed. Kennedy elicited the incriminating admissions subsequent to reaching the agreement with the prosecutor.

Kennedy also had a history as an agent and informer for the United States Drug Enforcement Administration (DEA). Prior to coming to Nevada, Kennedy was held in Oregon on unrelated charges. At that time, he was working as an informer for the DEA and making arrangements with inmates for the sale of drugs to others who were not incarcerated. Pursuant to a prior arrangement Kennedy would inform DEA of the particulars of these drug transactions, for which he was compensated.[1] Kennedy waived extradition to Nevada to dispose of the charges pending against him in Washoe County. Shortly after arriving in Washoe County, Kennedy contacted Scott Laurence, an officer with the DEA in Portland, Oregon. He informed Laurence of his location and requested money. Laurence sent him $200. This money was not paid for any future work or a specific assignment and it was totally unrelated to the Thompson case.

After his lengthy conversation with Thompson, Kennedy telephoned a Reno Police Department detective and informed him that he had information regarding Thompson, that he had acted as an informant in the past and that he hoped to receive some consideration from the Placer County District Attorney's Office regarding his pending burglary charges in exchange for his assistance in the Thompson case. Without any specific promises being made to Kennedy, Kennedy then told the police of his discussion with Thompson.

At Thompson's trial, Kennedy testified regarding the admissions Thompson had made concerning the Reno homicide and also testified to Thompson's confession to the California murders. At the end of the trial, Thompson was convicted of murder in the first degree with use of a deadly weapon, attempted murder

---

[1]The record suggests Kennedy was compensated for his help as an informer both monetarily and in the form of plea bargains resulting in reduced sentences.

with use of a deadly weapon, robbery with use of a deadly weapon, attempted robbery with use of a deadly weapon, and carrying a concealed weapon. The jury then imposed the death penalty for the murder and the court sentenced Thompson to the maximum sentences on the remaining charges. The judgment and sentences have been affirmed by this court.

On November 14, 1986, Thompson filed a petition for post-conviction relief and alleged that he was denied his constitutional right to the effective assistance of counsel at his trial. The thrust of his alleged errors is that defense counsel failed to file a motion to suppress the testimony of Kennedy and also failed to request a cautionary jury instruction at trial concerning the testimony of Kennedy. The district court found that Kennedy did indeed have a history as a paid informant for law enforcement and that he had acted as a "snitch" in several cases. However, the district judge concluded that Kennedy was not acting as a paid informant or agent of the police when he obtained the incriminating statements from Thompson in 1984, that Nevada law enforcement authorities were initially unaware of Kennedy's history as an informant, and that Nevada authorities did not have a prearranged agreement with Kennedy or place him in the cell with Thompson to collect information.

The district court concluded that any motion to suppress Kennedy's testimony would not have been successful because he was not a paid informant or government agent and that no cautionary instruction with regard to the reliability of a paid informant's testimony was necessary. The appellant's post-conviction relief petition was denied and this appeal was taken.

This court has disapproved of the practice of an inmate and law enforcement striking an agreement whereby the inmate is placed with an accused, solicits information to be used against the accused and then have the inmate testify against the accused concerning any admission secured, all in exchange for concessions by law enforcement to the charges pending against the inmate. Holyfield v. State, 101 Nev. 793, 711 P.2d 835 (1985). In that case, we held that the jailhouse informant's communication with the accused was the functional equivalent of express police questioning and that this violated the accused's privilege against self-incrimination as stated in the United States and Nevada Constitutions. Thompson argues that the case at bar is the same as the *Holyfield* case, and that Kennedy represented an unannounced police presence. We disagree with this contention.

Thompson made his numerous incriminating statements to Kennedy prior to Kennedy having any discussion with Nevada law enforcement authorities. Kennedy's conversation with Thompson was the result of a chance encounter and not pursuant

to any prearranged agreement between Kennedy and law enforcement. Kennedy had learned that providing information to law enforcement and being a jailhouse informant could be beneficial to someone accused of a crime, and he was obviously hopeful that the information secured from Thompson, that he provided to the police, would result in some benefit to him. However, no agreement had been made between Kennedy and the police concerning the Thompson case prior to his conversation with Thompson. Kennedy did not provide the information contingent upon a deal or any specific agreed upon benefit. The district court expressly found that Kennedy did not obtain any benefit from the disclosure of Thompson's statements.[2]

Thompson places heavy reliance upon United States v. Henry, 447 U.S. 264 (1980), a case where an inmate was requested by government agents to be alert to any statements made by federal prisoners. After the inmate had been released from jail, he was again contacted by the government agent and he disclosed incriminating evidence Henry had told him about a bank robbery. The inmate was paid for the information, testified at the trial concerning Henry's admissions, and Henry was convicted.

The Court held that Henry's incriminating statements made to the informant were not admissible at Henry's trial because the government had violated the defendant's sixth amendment right to counsel by intentionally creating a situation likely to induce the defendant to make incriminating statements without the assistance of counsel and then having the informant elicit the admissions.

In United States v. Malik, 680 F.2d 1162 (7th Cir. 1982), a similar factual situation to the case at bar was presented and that court observed that the *Henry* case required three important factors to be considered. First, whether the inmate was acting under instructions as a paid informant of the Government, second, whether the inmate was ostensibly no more than a fellow inmate of Henry's, and third, whether Henry was in custody when he made the statements. *Id.* at 1165. In analyzing the factors, the court determined that there were ample facts to support the lower court's decision that the informant was not acting under instructions from the government when the incriminating statements were made and it refused to extend the *Henry* rule to situations where an informant, acting on his own initiative, elicited incriminating information from an accused.

---

[2]Kennedy did receive the standard witness fee of $25 for each of the three times he testified in the Thompson case for a total of $75.00. Additionally, Kennedy pleaded to the possession of stolen property charge, and the burglary was dropped. The amended information may have been a result of negotiations arising from information provided to Washoe County authorities in several cases subsequent to the Thompson case. Nothing in the record suggests that Kennedy requested consideration from any other entity besides Placer County for the Thompson information.

We refuse to extend the rule of *Massiah* and *Henry* to situations where an individual, acting on his own initiative, deliberately elicits incriminating information. In *Henry,* the Court specifically referred to the Government's role as being an important factor. 447 U.S. at 270, 100 S.Ct. at 2187. The Maliks suggest that the Government must go to extraordinary lengths to protect defendants from their own loose talk; they suggest that potential informants be segregated from other inmates. We do not believe that the Sixth Amendment right to counsel requires the Government to take such steps. *Id.* at 1165.

The *Malik* decision is well reasoned and makes good sense. Accordingly, we hold that when a jailhouse informant elicits incriminating information from an accused while acting on his own initiative and not pursuant to any specific prior agreement with law enforcement, the incriminating statements may be received in evidence against the accused without violating his state or federal constitutional rights. An inmate should not be immune from the consequences of his voluntary loose talk to another inmate who does not represent a police presence.

Since Kennedy was not an unannounced police presence or eliciting information for the police pursuant to a prior agreement, there was no need to give the cautionary instruction concerning the testimony of a paid informant as required in Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968), or as recommended in Buckley v. State, 95 Nev. 602, 600 P.2d 227 (1979). The general cautionary instruction concerning witnesses testimony was given and there was substantial evidence to support each jury verdict as we previously determined in Thompson v. State, 102 Nev. 348, 721 P.2d 1290 (1986).

Accordingly, the decision of the district court denying appellant's petition for post-conviction relief is affirmed.

YOUNG, C. J., and WHITEHEAD, D. J., concur.[3]

STEFFEN, J., concurring:

I concur in the result only.

---

[3]The Honorable Jerry C. Whitehead, Judge of the Second Judicial District Court, was designated by the Governor to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice. Nev. Const. art. 6, sec. 4.

THE HONORABLE CHARLES E. SPRINGER voluntarily disqualified himself in this case.