# JOSEPH ABRIHAM BARRETT, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 18981

June 22, 1989                                    776 P.2d 538

[Rehearing denied December 28, 1989]

*Morgan D. Harris,* Public Defender and *Marcus D. Cooper,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex A. Bell,* District Attorney and *James Tufteland* and *Ronald Bloxham,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury convicted Joseph Barrett (Barrett) of murder with the use of a deadly weapon, kidnapping with the use of a deadly weapon, and grand larceny auto. The district court sentenced Barrett to serve consecutively, two life terms without the possibility of parole, two terms of twelve years, and one term of eight years for the murder, kidnapping and grand larceny auto, respectively. On appeal, Barrett contends: (1) that the district court erred in admitting evidence of his ex-wife's truthful character; (2) that the district court erred in admitting evidence of specific acts to show his ex-wife's character; (3) that the district court abused its discretion in denying his request to admit the entire transcript of his ex-wife's testimony from his preliminary hearing; (4) that the district court committed reversible error by commenting on the evidence; and (5) that the evidence used to convict him was insufficient.

The jury convicted Barrett of murdering his ex-mother-in-law. At trial, the State relied substantially on the testimony of Barrett's ex-wife, Carolyn Barrett (Carolyn). Barrett's theory of defense was that Carolyn committed the crime and that he was protecting her when he confessed the murder to his daughter. Throughout the trial, Barrett attempted to impeach Carolyn's testimony and place her character in issue. Barrett's counsel questioned Carolyn at length regarding inconsistencies between her initial statement to police and her trial testimony, and he attempted to characterize Carolyn as someone who could fake her emotions. Barrett's counsel intimated that Carolyn stood to inherit a large sum of money from her mother's death. He asked one of the State's witnesses, a police officer, if Carolyn had lied and if the officer had any concerns about who actually committed the murder. In addition, defense witnesses presented testimony which, if believed, would have contradicted Carolyn's testimony.

Barrett's closing argument summed up his theory of the case:

> The prosecutor has, in essence, said, "Believe Carolyn Barrett. Believe Carolyn Barrett." But he makes no attempt

to try and explain the inconsistencies in her statement. You know, it kind of reminds me of Pinnochio, the little wooden puppet who told all the lies. And every time he told a lie, his nose grew. You know, its often said that the more often you lie, the more you lie. Its difficult to keep a lie straight. You know, especially when you have a tendency to talk a lot and you want to tell everybody what happened. You know, one lie leads to another and another . . . and another. You know she talked to her neighbors about it. . . .

She had all the answers though. Any time it appeared that her credibility was being called into question, she always had an answer for it.

The State presented two witnesses in rebuttal who testified that, in their opinion, Carolyn was a truthful person. *See* NRS 50.085.[1] On redirect examination, one of the witnesses testified to specific acts of Carolyn's truthfulness. The district court admitted this testimony over Barrett's objection.

Barrett now contends that he did not introduce opinion evidence of untruthfulness or any other evidence impugning Carolyn's character, and that the district court erred by permitting the State to introduce character evidence to rehabilitate her. Moreover, Barrett claims that the district court improperly allowed the State to introduce specific acts to establish Carolyn's truthful character. We disagree.

As Barrett correctly points out, merely contradicting a witness' version of the facts does not constitute an attack on truthfulness that would justify admission of evidence of general reputation for truthfulness. Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983). However, Barrett directly and indirectly referred to Carolyn's truthful character throughout the trial. *See* Beard v. Mitchell, 604 F.2d 485, 503 (7th Cir. 1979) (use of prior inconsistent statements constitutes attack on truthfulness); State v. Petrich, 683 F.2d 173, 179 (Wash. 1984) (credibility attacked where witness' character is an inevitable central issue). The trial court correctly recognized that Barrett's attack on Carolyn's character was the "whole thrust of defendant's case."

---

[1] NRS 50.085 provides in relevant part:

　1.　Opinion evidence as to the character of a witness is admissible to attack or support his credibility but subject to these limitations:

　　(a) Opinions are limited to truthfulness or untruthfulness; and

　　(b) *Opinions of truthful character are admissible only after the introduction of* opinion evidence of untruthfulness or *other evidence impugning his character for truthfulness.*

(Emphasis added.)

NRS 50.085(1)(b) permits "[o]pinions of truthful character . . . after the introduction of opinion evidence of untruthfulness or *other evidence impugning [the witness'] character for truthfulness.*" (Emphasis added.) From our review of the record, we are convinced that Barrett introduced evidence intended solely to attack Carolyn's character, and that the district court properly admitted the State's witnesses' opinions.

We also disagree with Barrett's contention that the district court erred in permitting testimony of specific acts that demonstrated Carolyn's character for truthfulness. In pertinent part, NRS 50.085(3) provides:

> 3. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness himself or on cross-examination of a witness who testifies to an opinion of his character for truthfulness or untruthfulness, subject to the general limitations upon relevant evidence and the limitations upon interrogation and subject to the provisions of NRS 50.090.

In cross-examining one of the State's rebuttal witnesses, Barrett asked, "Would you proceed in telling me what your opinion of her truthfulness is based on?" Subsequently, on redirect, the State asked the witness, "Was there any specific instances at Furrs which would cause you to trust Carolyn?" Barrett objected to the introduction of specific acts to prove Carolyn's character for truthfulness. The district court overruled the objection, indicating that Barrett opened the door to this question during cross-examination. The witness testified to a specific work related instance where he and Carolyn worked together to discover the identity of a fellow employee, who had been stealing tips.

A witness may use redirect examination to explain or clarify testimony elicited during cross-examination. Russell v. State, 89 Nev. 37, 505 P.2d 599 (1973). Barrett's inquiries on cross-examination regarding the basis of the rebuttal witness' opinion opened the door to questions about specific acts that would show Carolyn's truthful character. We conclude, therefore, that the district court did not err by permitting this testimony. This court will not disturb a district court's ruling in the absence of a

showing of manifest abuse. Thompson v. State, 102 Nev. 348, 721 P.2d 1290 (1986).

Barrett also contends that the district court abused its discretion by refusing to admit into evidence the transcript of Carolyn's testimony at his preliminary hearing. At trial, Barrett sought to impeach Carolyn by showing that portions of her trial testimony were dissimilar from that which she gave at his preliminary hearing. When asked, Carolyn testified that prior to trial she had refreshed her memory by reading the preliminary hearing transcript of her testimony. Thereafter, Barrett moved, pursuant to NRS 50.125,[2] for admission of the entire transcript of Carolyn's testimony. The district court refused to permit introduction of the entire transcript of Carolyn's testimony, but indicated that it would allow the introduction of those portions that were relevant to her credibility.

Barrett maintains that the district court abused its discretion in denying his motion. In his view, the entire transcript was admissible because it affected Carolyn's credibility. Again, we disagree. The plain language of NRS 50.125(1)(d) provides that "those *portions* [of a writing used to refresh memory] which related to the testimony of the witness for the purpose of affecting his credibility" may be introduced into evidence. NRS 50.125(1)(d) (emphasis added). In attempting to impeach Carolyn's trial testimony, Barrett pointed to only three areas where her preliminary hearing testimony differed. There was no reason to admit the entire transcript of her preliminary hearing testimony, and the district court did not abuse its discretion in so ruling.

Barrett next contends that the district judge impermissibly commented on the evidence. A defense witness testified regarding an incident during which Carolyn sat and stared at the spot where her mother had been killed and, in an apparent emotional frenzy, repeatedly exclaimed, "I wish I wouldn't of did it." On cross-examination, the prosecution asked if the witness knew what Carolyn wished she had not done. Barrett objected to the ques-

---

[2]NRS 50.125 provides in relevant part:

    1. If a witness uses a writing to refresh his memory, either before or while testifying, an adverse party is entitled:

      (a) To have it produced at the hearing;

      (b) To inspect it;

      (c) To cross-examine the witness thereon; and

      (d) To introduce in evidence *those portions which relate to the testimony of the witness for the purpose of affecting his credibility.*

(Emphasis added.)

tion; however, before the court could rule the witness blurted out, "I think she was talking about the murder." The court then stated, "The objection is sustained. But I don't know if we're going to be able to erase the obvious conclusion that is unsupported by any facts of what this witness has volunteered."

Article 6, § 12 of the Nevada State Constitution provides: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." *See also* NRS 3.230.[3] First, in making the comment, the district judge was not "charg[ing]" the jury. Thus, we do not believe that either Article 6, § 12 or NRS 3.230 is applicable. Second, apart from making this assignment of error, Barrett has failed to demonstrate any prejudice. Accordingly, even if the district judge erred in making the comment, the error was nonetheless harmless. Gordon v. Hurtado, 91 Nev. 641, 541 P.2d 533 (1975) (violations of constitutional and statutory prohibitions against judges commenting on evidence are subject to the rule of harmless error).

Finally, Barrett contends that the evidence adduced at trial was insufficient to sustain his conviction. This contention is without merit. The record reveals that sufficient evidence was presented from which a jury could conclude appellant was guilty beyond a reasonable doubt. Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).

Based on the foregoing, we conclude that Barrett was fairly tried and convicted below. Accordingly, the district court's judgment is affirmed.

---

[3]NRS 3.230 provides:

District judges shall not charge juries upon matters of fact but may state the evidence and declare the law. In stating the evidence, the judge should not comment upon the probability or improbability of its truth nor the credibility thereof. If the judge state [sic] the evidence, he must also inform the jury that they are not to be governed by his statement upon matters of fact.