*911
 
 OPINION
 

 Per Curiam:
 

 At approximately 5:00 a.m. on December 28, 1994, two masked men robbed a bartender at the Depot Casino in Fallon, Nevada, of more than $2,700 in gaming tokens, coins, and cash. One of the men had a knife and the other had a gun. Later the same morning, Jackie Brogan (“Brogan”), the Depot Casino bartender who had been robbed, spoke with appellant Stephen Michael Boehm (“Boehm”), who intimated that he was involved in the robbery. Boehm was also later identified by employees of the Silverado Casino in Fernley, Nevada, as having played or cashed in tokens from the Depot Casino.
 

 On January 27, 1995, Boehm was incarcerated in the Churchill County Jail on charges unrelated to the Depot Casino robbery. At that time, Detective Lieutenant Raymond Dolan (“Lt. Dolan”) of the Fallon Police Department attempted to interrogate Boehm. It appears that Lt. Dolan inquired about the casino robbery only. Boehm refused to give a statement and requested the presence of an attorney.
 

 On February 16, 1995, Boehm was still incarcerated in the Churchill County Jail. Investigation of the casino robbery was ongoing and no charges related to that robbery had yet been filed against him. At that time, Deputy Public Defender Paul Drakulich was representing Boehm on at least one of the unrelated charges. Boehm did not have legal counsel on the Depot Casino crime.
 

 Lt. Dolan contacted an inmate at the jail, Michael Hart (“Hart”), and asked him to wear a “wire” and to acquire incriminating statements from Boehm. Apparently, officials promised that a letter would be written to the parole board on Hart’s behalf if he cooperated. Hart, who had some familiarity with legal matters and often aided fellow inmates with their cases, had met Boehm previously. Hart agreed to the proposal and then engaged Boehm in conversation while wearing the wire. Hart asked Boehm numerous questions about the casino robbery
 
 *912
 
 during their forty-five minute discussion. Boehm, who was unaware of the wire, made extensive incriminating statements linking him to the Depot Casino robbery and to other crimes. Lt. Dolan monitored and recorded the entire conversation.
 

 On May 4, 1995, the State filed a complaint charging Boehm with the Depot Casino robbery. During the trial, Hart refused to testify. Thereafter, outside the presence of the jury, the district court held two evidentiary hearings concerning admission of the recording of the Hart-Boehm conversation. Ultimately, the court permitted the jury to listen to the taped conversation, but deleted all references to the unrelated crimes. The court also furnished the jury with a transcript of the tape.
 

 The jury convicted Boehm of robbery with a deadly weapon and conspiracy to commit robbery. The district court sentenced Boehm to ten years for the count of robbery, ten years for using a firearm, and five years for the conspiracy count.
 

 DISCUSSION
 

 On appeal, Boehm first contends that Hart’s “custodial interrogation” violated Boehm’s privilege against self-incrimination guaranteed by the federal and state constitutions.
 

 The State contends that Boehm’s statements were voluntary, made without compulsion, and thus admissible.
 

 Under the self-incrimination clause of the Fifth Amendment to the United States Constitution, statements made by a suspect during police interrogation are inadmissible unless the suspect received a prior
 
 Miranda
 
 warning. Miranda v. Arizona, 384 U.S. 436, 467-68 (1966); Holyfield v. State, 101 Nev. 793, 797, 711 P.2d 834, 836-37 (1985).
 

 In
 
 Holyfield,
 
 the defendant was incarcerated for a previous crime. The police placed another inmate in the defendant’s cell with instructions to obtain incriminating statements. At trial, the informant testified as to the incriminating statements allegedly made by the defendant.
 
 Holyfield,
 
 101 Nev. at 796, 711 P.2d at 835-36.
 

 We held that such jailhouse questioning amounts to custodial interrogation which, without a prior
 
 Miranda
 
 warning, violates both the Fifth Amendment to the United States Constitution and article 1, section 8 of the Nevada Constitution.
 
 Id.
 
 at 804, 711 P.2d at 841. Focusing upon our determination that such illicit questioning does not aid the truth-finding function, we stated that this brand of custodial interrogation intentionally subverts a suspect’s constitutional rights.
 
 Id.
 
 at 804, 711 P.2d at 841. Thus, we deemed the suspect’s statements inadmissible.
 
 Id.
 
 at 805, 711 P.2d at 841.
 

 
 *913
 
 In a later decision, we explained that:
 

 this court has disapproved of the practice of an inmate and law enforcement striking an agreement whereby the inmate is placed with an accused, solicits information to be used against the accused and then have the inmate testify against the accused concerning any admission secured, all in exchange for concessions by law enforcement to the charges pending against the inmate.
 

 Thompson v. State, 105 Nev. 151, 154, 771 P.2d 592, 594-95 (1989) (citing
 
 Holyfield,
 
 101 Nev. at 793, 711 P.2d at 835). Today, we reaffirm Holyfield.
 
 [1]
 

 To determine whether custodial interrogation without prior warning in contravention of the Nevada Constitution has occurred, this court examines whether the suspect was (1) in custody, (2) being questioned by an agent of the police, and (3) subject to “interrogation.”
 
 See Holyfield,
 
 101 Nev. at 798-99, 711 P.2d at 837. First, a suspect incarcerated on other charges is “in custody” for purposes of the above test.
 
 Id.
 
 at 798, 711 P.2d at 837. Second, a fellow inmate agreeing to foster police efforts to inculpate the subject of the investigation qualifies as an “agent of the police.”
 
 Id.,
 
 711 P.2d at 837. Third, factors tending to indicate that questioning by a fellow inmate constitutes the “functional equivalent” of express police interrogation,
 
 see id.
 
 at 799, 711 P.2d at 838, citing Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980), occur where (a) the police deliberately place the interrogator next to the subject in the hope of gaining incriminating testimony, (b) interrogator and subject are previously acquainted, and (c) it is plausible that the subject will “talk.”
 
 See Holyfield,
 
 101 Nev. at 799-800, 711 P.2d at 838-39.
 

 We conclude that Boehm’s right against self-incrimination as guaranteed by article 1, section 8 of the Nevada Constitution was violated. Each of the
 
 Holyfield
 
 custodial interrogation factors has been met. First, as Boehm was incarcerated in the Churchill County Jail at the time of the jailhouse conversation, he was in custody. Second, as admitted by Lt. Dolan and as shown by Hart’s extensive, voluntary cooperation with police, Hart was acting as an agent of the police. Finally, Hart’s talk with Boehm amounted to the functional equivalent of express custodial interrogation because (1) Fallon police approached Hart to set up the
 
 *914
 
 “sting,” (2) Hart was previously acquainted with Boehm, (3) Hart questioned Boehm extensively without giving him a
 
 Miranda
 
 warning, and (4) the police knew that Hart’s position as a “legal advisor” to inmates would allow him to ask Boehm questions about the casino robbery without drawing undue suspicion. Under these circumstances, it was plausible that Boehm would reveal incriminating information. We find it particularly egregious that police used a jailhouse law clerk, a person to whom suspects and defendants are bound to aiford substantial trust and reliance, to conduct the questioning. Accordingly, we conclude that the questioning of Boehm in the Churchill County Jail on February 16, 1995, constituted an unlawful custodial interrogation under article 1, section 8 of the Nevada Constitution.
 
 See id.
 
 at 804, 711 P.2d at 841. Boehm’s “confession” should thus have been excluded.
 

 Boehm also contends that his right to counsel was violated because Hart elicited incriminating statements from Boehm after Boehm had requested the presence of an attorney.
 

 The State contends that Boehm had no right to counsel at the time of the jailhouse conversation because he had not yet been charged with the Depot Casino robbery.
 

 Miranda
 
 and its progeny have established a Fifth Amendment right to counsel that arises at the time of a (pre-indictment) custodial interrogation.
 
 See
 
 McNeil v. Wisconsin, 501 U.S. 171, 176 (1991);
 
 accord
 
 Sechrest v. State, 101 Nev. 360, 364, 705 P.2d 626, 629 (1985). Once a suspect asserts his right to counsel during custodial questioning, the current interrogation must cease and he may not be approached for further interrogation “until counsel has been made available to him”
 
 (i.e.,
 
 until counsel is present). Edwards v. Arizona, 451 U.S. 477, 484-85 (1981);
 
 see also
 
 Minnick v. Mississippi, 498 U.S. 146 (1990);
 
 Sechrest,
 
 101 Nev. at 364-65, 705 P.2d at 629. This
 
 “Edwards
 
 rule ... is not offense-specific: Once a suspect invokes the
 
 Miranda
 
 right to counsel for interrogation regarding one offense, he may not be reapproached regarding
 
 any
 
 offense unless counsel is present.” Arizona v. Roberson, 486 U.S. 675 (1988)
 
 [2]
 
 ,
 
 cited in McNeil,
 
 501 U.S. at
 
 177
 
 (emphasis added).
 

 
 *915
 
 To invoke the Fifth Amendment right to counsel, the suspect must make known his wish for the sort of “lawyerly assistance” contemplated by
 
 Miranda. McNeil,
 
 501 U.S. at 178 (citing
 
 Edwards,
 
 451 U.S. at 484). Thus, the suspect must make some statement that “can reasonably be construed to be an expression of a desire for the presence of an attorney
 
 in dealing with custodial interrogation by the policed'’ McNeil,
 
 501 U.S. at 178 (emphasis in original). If the police continue their interrogation after a suspect has requested counsel, the suspect’s statements are presumed involuntary and are inadmissible as substantive evidence at trial,
 
 id.
 
 at 177, unless the suspect initiates further communication with police.
 
 Sechrest,
 
 101 Nev. at 364-65, 705 P.2d at 630.
 

 Here, the record shows that on January 27, 1995, Lt. Dolan attempted to interrogate Boehm while he was incarcerated in the Churchill County Jail on charges unrelated to the Depot Casino robbery. Boehm had not yet been charged with the casino robbery. It appears that Lt. Dolan attempted to interrogate Boehm on the subject of the casino robbery only. At that time, Deputy Public Defender Paul Drakulich was representing Boehm on his previous, unrelated crimes.
 

 Lt. Dolan testified that Boehm was unwilling to give a statement and requested the presence of an attorney. We conclude that Boehm’s request for counsel amounted to a “desire for the presence of an attorney in dealing with custodial interrogation by police.”
 
 See McNeil,
 
 501 U.S. at 178;
 
 Edwards,
 
 451 U.S. at 484-85. Thus, Boehm invoked his Fifth Amendment right to counsel.
 

 Once a suspect invokes his Fifth Amendment right to counsel, he may not be reapproached regarding any offense unless counsel is present.
 
 Roberson,
 
 486 U.S. at 680-88. As explained previously,
 
 Holyfield
 
 prohibits police-initiated jailhouse interrogation by an informant without a prior warning because it amounts to custodial interrogation contravening the Nevada Constitution. Accordingly, we conclude that Hart’s conversation with Boehm violated Boehm’s right to counsel because it constituted a custodial interrogation
 
 (i.e.,
 
 “a reapproach”) subsequent to Boehm’s request for counsel three weeks prior.
 

 As there is no evidence that Boehm waived his Fifth Amendment right to counsel at any time prior to the jailhouse interrogation, evidence of that conversation should have been excluded from the trial.
 
 See McNeil,
 
 501 U.S. at 177. Accordingly, we conclude that the district court erred by allowing the jury to hear the recording and read the transcript of Hart’s conversation with Boehm.
 

 
 *916
 
 The State contends that even if Boehm’s constitutional rights were contravened, those violations amounted to harmless error in light of the overwhelming evidence of guilt.
 

 The record shows that (1) Boehm revealed his participation in the crime to Brogan a few hours after the robbery and later to witness Jason Horn (“Horn”), (2) items matching those carried by the robbers were found in Boehm’s residence, (3) Brogan’s testimony was detailed, and (4) a videotape shows Boehm playing a slot machine in the Silverado Casino in Fernley in which Depot Casino tokens were discovered shortly thereafter. This evidence was properly admissible against Boehm.
 

 While considerable, this evidence is not overwhelming. The testimony of Brogan, who was later charged as an accessory after the fact in the casino robbery, and Horn are of questionable credibility. Boehm was never identified as one of the armed robbers by the eyewitnesses to the casino robbery. Moreover, the incriminating evidence provided by Boehm during his conversation with Hart was both extensive and detailed and was likely relied upon heavily by the jury.
 
 See generally, Holy field,
 
 101 Nev. at 805, 711 P.2d at 841-42.
 

 Accordingly, we conclude that admission of the recording and transcript of Hart’s conversation with Boehm amounted to more than harmless error. We reverse Boehm’s conviction and remand this case to the district court for a new trial.
 

 [1]
 

 We recognize that that portion of the
 
 Holyfield
 
 decision interpreting federal law has been abrogated by Illinois v. Perkins, 496 U.S. 292, 300 (1990). However, we hold that our interpretation of the Nevada Constitution in
 
 Holyfield
 
 remains valid.
 
 See Holyfield,
 
 101 Nev. at 804 n.10, 711 P.2d at 841 n.10.
 

 [2]
 

 In
 
 Roberson,
 
 police arrested a suspect on a burglary charge and the suspect invoked his right to counsel. Three days later, while the suspect was still in custody, a different officer advised the suspect of his
 
 Miranda
 
 rights and interrogated him about a different crime. The officer obtained incriminating statements about that crime. The Court held that the
 
 Edwards
 
 rule applies to bar police attempts to reinitiate custodial interrogation on any crime following an incarcerated suspect’s request for counsel. Thus, in that situation, an agent of the police conducting an investigation of a separate crime may not interrogate the suspect as to the separate crime outside the presence of counsel. 486 U.S. at 678, 680-88.