Rose, C. J.,
concurring:
During custodial interrogation, Harte asked, “When do I get to talk to a lawyer?” I consider this statement to be an unequivocal request for counsel, and thus the failure to stop questioning and provide Harte with an attorney a violation of Harte’s federal and state constitutional rights. See Boehm v. State, 113 Nev. 910, 914-15, 944 P.2d 269, 272 (1997); Sechrest v. State, 101 Nev. 360, 364-67, 705 P.2d 626, 629-31 (1985); Edwards v. Arizona 451 U.S. 477 (1981) (holding that once an unequivocal request for counsel is made, all further police questioning must cease and the admission of such evidence violates an accused’s right to counsel).
Even if Harte’s requests for an attorney were equivocal, as the majority has held, our decision in Sechrest requires that the police officers cease their interrogation unless their questions are *1074 designed to clarify the detainee’s desire to speak to an attorney. This rule does not seem to have caused any undue hardship for law enforcement in the past fifteen years and it has provided a reasonable method for ascertaining an arrested person’s true intent about whether he wishes to have legal counsel during custodial interrogation.
The majority, however, has decided to overrule the Sechrest case in light of the United States Supreme Court’s decision in Davis v. United States, 512 U.S. 452 (1994), wherein a deeply divided five-four majority held that custodial interrogation may continue when the detainee’s request for counsel is equivocal. I find more merit in the Davis concurrence, however, in which Justice Souter endorsed the cease-and-clarify approach we adopted in Sechrest and observed:
While the question we address today is an open one, its answer requires coherence with nearly three decades of case law addressing the relationship between police and criminal suspects in custodial interrogation. Throughout that period, two precepts have commanded broad assent: that the Miranda safeguards exist “ ‘to assure that the individual’s right to choose between speech and silence remains unfettered throughout the interrogation process,’ ” and that the justification for Miranda rules, intended to operate in the real world, “must be consistent with . . . practical realities.” A rule barring government agents from further interrogation until they determine whether a suspect’s ambiguous statement was meant as a request for counsel fulfills both ambitions. It assures that a suspect’s choice whether or not to deal with police through counsel will be “scrupulously honored,” and it faces both the real-world reasons why misunderstandings arise between suspect and interrogator and the real-world limitations on the capacity of police and trial courts to apply fine distinctions and intricate rules.
Davis, 512 U.S. at 468-69 (citations omitted).
We do not have to abandon our rules and decisions every time the Rehnquist majority decides to reduce individual protections. See State v. Harnisch, 114 Nev. 225, 227-28, 954 P.2d 1180, 1182 (1998) (“‘It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires.’” (quoting California v. Ramos, 463 U.S. 992, 1013-14 (1983))). Instead, we should retain our precedent and conclude that the right to counsel clause of our own Nevada Constitution requires compliance with the Sechrest decision. See, e.g., State v. Hoey, 881 P.2d 504, 522-23 (Haw. 1994) (rejecting Davis majority and adopting the cease-and-clarify rule *1075 announced in Davis concurrence because the right to counsel provisions of the state’s constitution afforded greater rights than those guaranteed by the Federal Constitution). Accordingly, I would hold that the additional protections afforded in Sechrest are required by our own state constitution.
Although I disagree with the majority’s conclusion that Harte’s request was equivocal and that Sechrest should be overruled, I nonetheless concur with the majority’s decision to affirm the district court’s judgment. On account of the abundant admissible evidence establishing Harte’s guilt, including other incriminating statements that Harte made and that were properly admitted, I would hold that the district court error was harmless beyond a reasonable doubt. See Holyfield v. State, 101 Nev. 793, 805, 711 P.2d 834, 841-42 (1985) (applying harmless error test where evidence was admitted in violation of Miranda); Arizona v. Fulminante, 499 U.S. 279, 295-96 (1991) (holding that admission of evidence obtained in violation of Miranda is subject to harmless error analysis).