WALLACE, Judge.
Charles Edward Halm raises four issues in his appeal of his judgment and sentence for first-degree murder. All of these issues are without merit, and we affirm Halm’s judgment and sentence. However, we write to address Halm’s argument that he was improperly subjected to custodial interrogation by a state agent after he had invoked his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
While Halm was in jail on unrelated charges, two homicide detectives employed by the Pinellas County Sheriffs Office attempted to interrogate him about the brutal slaying of a St. Petersburg woman. Upon being advised of his rights under Miranda, Halm refused to answer any questions. Afterwards, the detectives recruited one of Halm’s friends to speak with Halm in the jail about various aspects of the homicide that the detectives were investigating.[1] The false friend spoke with Halm on two or three occasions at the Pinellas County Video Visitation Center and induced Halm to make statements that implicated himself in the murder. Halm’s conversations with his false friend were *394 recorded on videotape while one of the detectives monitored the discussions from a separate room.[2] All of Halm’s videotaped conversations with his false friend occurred before Halm was charged with the murder.
Halm moved to suppress the videotapes on the ground that they were obtained in violation of his Fifth Amendment right to remain silent and his Fifth Amendment right to counsel.[3] In its opposition to the motion, the State relied primarily on the United States Supreme Court’s decision in Illinois v. Perkins, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). The trial court denied the motion to suppress, and an edited version of Halm’s jailhouse conversations with the false friend was played for the jury at Halm’s trial.
The facts in Perkins bear some similarity to the facts in Halm’s case. While Perkins was in jail on unrelated charges, police who were investigating a murder placed an undercover agent and a cooperating inmate in Perkins’ cell. Id. at 294-95, 110 S.Ct. 2394. Perkins then made statements to the agent that implicated Perkins in the murder that was the subject of the police investigation. Id. at 295, 110 S.Ct. 2394. After Perkins was charged with the murder, he moved to suppress these statements. Id. The trial court granted the motion, and the State of Illinois appealed. Id. The Illinois appellate court affirmed the trial court’s ruling, holding that Miranda “prohibits all undercover contacts with incarcerated suspects that are reasonably likely to elicit an incriminating response.” Id.
On review by certiorari, the United States Supreme Court emphatically rejected the Illinois court’s conclusion. The Court held that Miranda warnings to an incarcerated suspect are not required before an undercover law enforcement officer may ask the suspect questions that might elicit an incriminating response. Id. at 300, 110 S.Ct. 2394. The rationale of the Court’s decision in Perkins focused on the element of coercion as the foundation of the concerns about custodial interrogation that were expressed in Miranda. The Court explained:
Conversations between suspects and undercover agents do not implicate the concerns underlying Miranda. The essential ingredients of a “police-dominated atmosphere” and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking. There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess.
Id. at 296-97, 110 S.Ct. 2394 (citations omitted). Although Miranda forbids coer *395 cion, it does not prohibit the sort of ‘strategic deception” that the police had used against Perkins. Id. at 297, 110 S.Ct. 2394. Accordingly, “[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda’s concerns.” Id. Based on this reasoning, the Court reversed the Illinois court’s decision. Id. at 300, 110 S.Ct. 2394.
The rationale of the Court’s decision in Perkins is quite broad. It applies not only to undercover police officers but also, as in this case, to private citizens who act as agents of law enforcement.[4] Halm seeks to distinguish Perkins on the ground that unlike the accused in Perkins, Halm had been advised of his Miranda rights and had asserted them before he unwittingly made inculpatory statements to a law enforcement agent.
After a thorough review of the record and the pertinent authorities, we conclude that the trial court properly denied Halm’s motion to suppress. As an initial matter, we agree with Halm that he unambiguously invoked his Fifth Amendment right to remain silent, but we disagree with his argument that he also invoked his Fifth Amendment right to the assistance of counsel. However, our rejection of Halm’s argument that he invoked his Fifth Amendment right to the assistance of counsel is not material to our disposition of this case. The dispositive question here is whether the false friend’s conversations with Halm — conducted after Halm had invoked his right to remain silent — constituted custodial interrogation within the meaning of Miranda. We hold that they did not. See United States v. Stubbs, 944 F.2d 828, 831-32 (11th Cir.1991); Alexander v. Connecticut, 917 F.2d 747, 750-51 (2d Cir.1990); State v. Anderson, 117 P.3d 762, 763-67 (Alaska Ct.App.2005); State v. Hall, 204 Ariz. 442, 65 P.3d 90, 97-100 (2003); People v. Guilmette, 1 Cal.App.4th 1534, 2 Cal.Rptr.2d 750, 751-54 (1991); State v. Bagshaw, 141 Idaho 257, 108 P.3d 404, 406-09 (2004). But cf. Boehm v. State, 113 Nev. 910, 944 P.2d 269, 270-73 (1997) (reaching a contrary result on state constitutional law grounds). Therefore, no violation of Halm’s Fifth Amendment rights occurred.
Halm correctly points out that the homicide detectives recruited and directed the false friend in a manner that the detectives intended would evade Halm’s unequivocal assertion of his right to remain silent. However, we need not consider whether the detectives’ deceptive stratagem violated Halm’s due process rights because Halm did not raise the issue in the trial court. Cf. Voltaire v. State, 697 So.2d 1002 (Fla. 4th DCA 1997) (holding that the police violated the defendant’s due process rights by placing an undercover officer in a jail cell with the defendant to extract incriminating statements from him after the defendant had refused to speak with the arresting officer).
Affirmed.
WHATLEY and NORTHCUTT, JJ., Concur.

. In exchange for the false friend’s cooperation, the detectives agreed to speak to the prosecutor about recommending leniency for the false friend's wife in an unrelated sentencing proceeding.

. Signs posted in the visiting area warned inmates that their conversations might be recorded.

. Halm also moved to suppress the videotapes on the ground that the detectives violated his Sixth Amendment right to counsel by recruiting the false friend to interrogate him about the murder while Halm was in custody. However, Halm’s Sixth Amendment right to counsel is not implicated here because the videotaped conversations between Halm and the false friend occurred before Halm was charged with murder. The Sixth Amendment right to counsel is offense specific, and it "does not attach until a prosecution is commenced.” McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

. "To determine whether a private individual acts as an instrument of the state, courts look to (1) whether the government was aware of and acquiesced in the conduct; and (2) whether the individual intended to assist the police or further his own ends. State v. Alexander, 810 So.2d 552, 557 n. 2 (Fla. 5th DCA 2002). Under this test, Halm's false friend undoubtedly qualified as a state agent.